# Exhibit 4



Brian C. Banner
Shareholder
bbanner@sgbfirm.com
[O] 512.402.3569
[C] 512.468.6297

*Via Electronic Mail to wramey@rameyfirm.com*

August 5, 2022

William P. Ramey, III
Ramey LLP
5020 Montrose Blvd., Suite 800
Houston, TX 77006

      **RE:**    *EscapeX IP LLC v. Google LLC*, 6-22-cv-00428 (W.D. Tex. April 28, 2022)

Dear Mr. Ramey:

We write to demand EscapeX dismiss this lawsuit with prejudice. EscapeX failed to conduct an adequate pre-suit investigation of infringement: not only is the accused feature not part of YouTube Music, YouTube Music is squarely not an "artist-specific application." In addition, even a cursory search identifies prior art that demonstrates the invalidity of the asserted patent in light of the contentions against YouTube Music.

### I. EscapeX Failed to Conduct an Adequate Pre-Suit Investigation

EscapeX failed to conduct an adequate pre-suit investigation before it alleged that U.S. Patent No. 9,009,113 ("the '113 patent") is infringed by Google. "[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims . . . ." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013).

#### A. The Identified "Auto-Add" Feature is Not Part of YouTube Music

As best understood, EscapeX alleges YouTube Music infringes by performing the method of claim 1 of the '113 patent. *See* First Amended Complaint, Dkt. 8, ¶¶ 11–12; *see also id.*, Exhibit A at 1 ("Google's YouTube Music has a computer implemented method for updating a dynamic album . . . ."). Specifically, EscapeX has identified an "Auto add" feature as infringing the "receiving," "accessing," "modifying," and "storing" steps of claim 1. *See id.*, Exhibit A at 3–5.

EscapeX's allegations are baseless because the cited "Auto add" feature is not part of YouTube Music at all. Rather, the now-nonexistent "Auto add" feature was previously part

of YouTube Video.[1]  Indeed, the screenshots in EscapeX's own claim chart[2] show the "Auto add" feature as relating to *videos*—not music.  For example, the "Auto add" setting dialogue in Plaintiff's chart refers to adding "videos" to playlists:



Dkt. 8, Ex. A at 3 (annotated).  The other screenshot in EscapeX's claim chart similarly leaves no doubt this "Auto add" feature relates to videos, not to music or songs:

*Id.* at 4.

The distinction between YouTube Video and YouTube Music is important.  First, these are different products.  Thus, EscapeX's claim charts are deficient because the method steps are not performed by any product, much less in the manner EscapeX alleges.  Additionally, claim 1 of the '113 patent (and all other independent claims) requires a "dynamic album that includes a plurality of songs"—i.e., the claims are directed to albums of songs, not videos.  Thus, a feature of YouTube Video (e.g., "Auto add") cannot infringe claims that relate to dynamic albums *of songs*.  Had EscapeX performed even a cursory pre-suit

---

[1] The "Auto add" feature was removed from YouTube video by late 2020.  *See, e.g.,* https://support.google.com/youtube/thread/86654246/non-fixed-deleted-feature-why-did-you-cancel-auto-add-feature-in-playlist-settings?hl=en.

[2] Moreover, the webpages and URL citations in Plaintiff's claim chart are no longer functional and instead redirect to pages demonstrating this functionality does not exist even on YouTube Video.

investigation, it would have realized its allegations improperly cobbled together features from different products.

### B. YouTube Music is Not an "Artist Specific Application"

Claim 1 of the '113 patent requires a user device with an "artist specific application." (So does every other independent claim.) The '113 patent describes an "artist specific application," or "ASA," as an application that "includes music and other content related to [an] artist." '113 patent at 4:56–58. The patent distinguishes an ASA from a single application that streams music from multiple artists:

> **Thus, instead of a single application that streams music from multiple artists, each ASA may relate to an individual artist.**

'113 patent at 4:62–64. YouTube Music is a single application that streams music from multiple artists. Thus, according to the '113 patent's own specification, YouTube Music is not an "artist specific application" as required by each of the claims. Had EscapeX performed even a superficial pre-suit investigation, it would know YouTube Music streams music from multiple artists and, therefore, is not an "artist specific application" and does not infringe.

### II. The '113 Patent is Invalid

If claim 1 of the '113 patent is as broad as EscapeX alleges in its Complaint, it is invalid under 35 U.S.C. §§ 102 and/or 103 in view of—at least—U.S. Patent No. 6,526,411 to Sean Ward titled "System and Method for Creating Dynamic Playlists," filed November 15, 2000 ("Ward"). A claim chart comparing Ward with claim 1 of the '113 patent is provided below:

| 9,009,113, Claim 1 | Ward, U.S. 6,526,411 |
|---|---|
| 1. A computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist, the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, | To the extent the preamble is limiting, Ward discloses this limitation.<br><br>For example, Ward discloses a "computer implemented method for updating a dynamic album that includes a set of songs":<br><br>*"Method and system provided for creating a dynamic playlist including meta-data having potential association with a respective content item configured to be played on a content player, and having dynamic addition or subtraction of playlist items."*<br><br>Ward at Abstract. |

| | |
|---|---|
| cause the user device to perform the method, the method comprising: | *"The present invention relates generally to a system and method for music and/or video playback, and more particularly, providing to the user recommendations of items which have not yet been sampled by the user, based on a list of items already sampled by the user, utilizing a method for the dynamic addition, subtraction and sorting of a queue of items for playback."* <br><br> Ward at 1:17–23. <br><br> Further, Ward discloses "an artist specific application associated with an artist": <br><br> *"Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."* <br><br> Ward at 4:52–58. <br><br> Additionally, Ward discloses "a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method": <br><br> *"The dynamic playlist client system 110 includes a content player 10, which includes known devices for playback of audio or video files, taking the form of popular computer programs for use on personal computers, as well as integrated video and audio stereo systems."* <br><br> Ward at 5:46–51. |

| | |
|---|---|
| receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device; | Ward discloses this limitation.<br><br>For example, Ward discloses "receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs":<br><br>*"Specifically, meta-elements can be added to the playlist, such as with music, the addition of an artist to the playlist. Then, when the playlist is used, the playlist queries a main server for the existence of content relating to that meta-data. I.e. adding an artist or group would add the entire given artist or groups content to the playlist, or would add the content not removed by anti-links (listed dislikes) existing in a user's profile. . . . Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."*<br><br>Ward at 4:40–58.<br><br>Additionally, Ward discloses "the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device":<br><br>*"Content player 10 includes a data storage device 15 configured to operate one of any type of data storage model, including, but not limited to, a relational data base. Regardless of the data storage model employed, data storage device 15 includes storage of a meta-data playlist 16, optional storage of local content items 17, and at least one user profile 18, all to be described later."* |

| | |
|---|---|
| | Ward at 5:61–67. |
| accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters; | Ward discloses "accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters": <br><br> *"Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."* <br><br> Ward at 4:52–58. |
| modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device; | Ward discloses "modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device": <br><br> *"Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."* <br><br> Ward at 4:52–58. |
| storing, by the user device, the modified information encoding the plurality of songs at the user device; and | Ward discloses "storing, by the user device, the modified information encoding the plurality of songs at the user device": <br><br> *"Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a* |

| | |
|---|---|
| | *particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."*<br><br>Ward at 4:52–58. |
| playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device. | Ward discloses "playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device":<br><br>*"The present invention relates generally to a system and method for music and/or video playback, and more particularly, providing to the user recommendations of items which have not yet been sampled by the user, based on a list of items already sampled by the user, utilizing a method for the dynamic addition, subtraction and sorting of a queue of items for playback."*<br><br>Ward at 1:17–23.<br><br>*"Additionally, it would allow users to subscribe to artists and automatically have their playlists updated with new content, such as when an artist releases a new song, by having playlists which contained the meta-category of a particular artist included in their playlist. That would be a valuable opportunity for both users and artists to connect."*<br><br>Ward at 4:52–58. |

Further, Ward is just one example.  Artist-specific music applications were available at least as early as 2011 (long before the '113 patent's 2014 filing date):

> **Should You Get One, and How Much Will It Cost?**
> So should artists have their own apps? Companies such as Mobile Roadie, which designed Madonna's app, charge from $499 for setup and $29 per-month maintenance to $1,999 for setup and $99 per-month for additional features such as horizontal views. iLike is charging artists a onetime fee of $99 and will also participate in a revenue-sharing deal for those that want to charge for their applications (the current plan is for a fifty-fifty split). Artists that give their application away for free will have to pay only the initial fee. An app can be used for the same purposes as a website: promoting new music, videos, and shows; selling merchandise and music; posting news

Gordon, "The Future of the Music Business," at 172 (2011) (available at https://www.google.com/books/edition/The_Future_of_the_Music_Business/eiQmgEFs_4YC?hl=en&gbpv=1&dq=musician+smartphone+apps&pg=PA172&printsec=frontcover).

The prior art is also replete with systems and methods for modifying dynamic albums on user devices, including:

- U.S. Patent No. 9,317,185, "Dynamic Interactive Entertainment Venue" to Martin et al., assigned to Apple Inc. (2006 priority date).
- U.S. Patent No. 8,224,927, "Protocol for Remote User Interface for Portable Media Device with Dynamic Playlist Management" to Lydon et al., assigned to Apple Inc. (2008 priority date).
- U.S. Patent No. 8,819,553, "Generating a Playlist Using Metadata Tags" to Wood et al., assigned to Apple Inc. (2008).
- U.S. Patent No. 8,634,944, "Auto Station Tuning" to Bull et al., assigned to Apple Inc. (2008 priority date).

By the time Plaintiff applied for the '113 patent in 2014, dynamic albums, dynamic playlists, and artist-specific music applications had been developed and even sold in the U.S., thus confirming the '113 patent is not novel and should not have issued.

\* \* \*

Given the glaring deficiencies in EscapeX's infringement allegations and the demonstrated invalidity of the '113 patent, this litigation is clearly baseless—and a reasonable pre-suit investigation would have revealed as much.  Google has had to expend resources to defend itself in this litigation and will continue to incur expenses and fees that are unwarranted in light of the merits here.  Google therefore demands EscapeX confirms it will voluntarily dismiss this lawsuit with prejudice by **August, 19 2022**.  If, instead, EscapeX continues to pursue this cause of action, Google reserves its rights to pursue any and all remedies, including seeking attorneys fees.

Regards,

Brian C. Banner
*Attorney for Defendant Google*

cc: Jeffrey E. Kubiak (jkubiak@rameyfirm.com)